IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS KLEVE,<br><br>    Petitioner,<br><br>  v.<br><br>ANTHONY KANE, Acting Warden,<br><br>    Respondent.<br>_____/ | No. C 05-1778 CW<br><br>ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |

    Petitioner Thomas Kleve has filed a petition for a writ of habeas corpus pursuant to title 28 U.S.C. § 2254, challenging as a violation of his constitutional rights the denial of parole by the California Board of Parole Hearings (Board).[1]  Respondent Anthony Kane has filed an answer.  Petitioner has filed a traverse.  Having considered all of the papers filed by the parties, the Court DENIES the petition.

BACKGROUND

    On September 20, 1987, Petitioner and his passenger, Calley[2], were stopped by police because of an expired registration tag on Petitioner's truck.  The officer observed that Petitioner was holding a small vial of white powder, which was later determined to be methamphetamine.  The officer also noticed the barrel of a

---

[1] The Board of Prison Terms was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings.  Cal. Penal Code § 5075(a).

[2] Calley's first name was not included in the record.

shotgun protruding from Calley's jacket.  Officers searched Petitioner's truck and found a semi-automatic pistol, two magazines loaded with ammunition, a six-inch dagger, and a silencer.  While searching Calley's person, officers recovered a loaded shotgun, a stick of dynamite, and a blasting cap taped to a magnet.  The officers further recovered five rounds of ammunition from Petitioner's person.  Finally, the officers found a note in Calley's wallet with the name, address, and description of a protected government witness who was expected to testify in a pending drug case.  Petitioner and Calley were stopped a short distance from the location of the witness.

Petitioner was tried for conspiracy to commit first-degree murder, which resulted in a mistrial.  In 1989, Petitioner was retried and convicted of conspiracy to commit second-degree murder, but was acquitted of conspiracy to commit first-degree murder.  The prosecution's theory was that Petitioner and Calley conspired to assassinate the witness to prevent him from testifying.  The evidence consisted of the facts that Petitioner was driving near the location of the witness, that numerous weapons were found in his truck, and that Calley had a note containing information about the witness.  Petitioner's defense was that he was unaware of Calley's plans to murder the witness, that he did not know Calley well, and that he was merely giving Calley a ride.  No direct evidence showed that Petitioner was aware of Calley's alleged plan to murder the witness.  Petitioner's prior criminal record consisted of one arrest in 1978 for resisting a peace officer and an arrest in 1988 for possession for sale of methamphetamine, as a

2

result of which he received three years of probation.

Petitioner was sentenced to fifteen years to life with the possibility of parole.  Since his incarceration, Petitioner has had an exemplary record.  His only disciplinary infraction, which occurred his first year in prison, was for an unmade bed and an untidy cell.  Petitioner has obtained his General Education Diploma and completed other educational courses.  He has attended Alcoholics Anonymous for over a decade and has attended other self-help programs such as Anger Management and Substance Abuse Recovery.  He has received forty-eight laudatory chronos for his conduct and achievements while in prison.

On August 27, 2003, Petitioner attended his third parole suitability hearing before the Board.  In addition to Petitioner's prison record, the Board considered the following evidence.  An evaluation by a forensic psychologist concluded that Petitioner possessed insight and remorse about his criminal conduct and that his potential for violence if released would be "no greater than an average citizen in the community."  Prior psychological evaluations also had found that Petitioner did not possess a tendency towards violence.  However, a report by Petitioner's correctional counselor stated that his parole would pose a "moderate degree of threat."  Petitioner's attorney objected to the admission of the counselor's opinion and the panel overruled the objection.[3]  Petitioner also submitted letters from his family, including his wife, mother, and

---

[3]After the hearing, Petitioner appealed the counselor's report and the counselor changed his prediction to state that "the risk to the public is moderate to low should Kleve be released from prison."

children, supporting his release and confirming that he would have housing and employment upon his release. Petitioner further stated that he would continue to attend Alcoholics Anonymous indefinitely. Although he did not discuss the crime itself, Petitioner stated that he felt remorse and took full responsibility for his actions.

After brief deliberation, the Board panel concluded that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released and issued a one-year denial of parole. The Board panel cited several bases for its decision, but stated the "paramount reason" was the gravity of the commitment offense. It noted that Petitioner and his co-conspirator's intended victim was nineteen years old and a federally protected witness. As other factors supporting its decision, the panel cited Petitioner's "inexplicable" motive, his history of unstable relationships with others, and his need for additional self-help and therapy programming. The Board also relied on Petitioner's correctional counselor's assessment that Petitioner would pose a moderate threat if released.

On July 26, 2004, Petitioner filed in Los Angeles County Superior Court a petition for a writ of habeas corpus challenging the Board's decision. In its reasoned opinion, the court denied the petition, finding that some evidence supported the Board's decision. However, it held that no evidence supported the Board's findings that Petitioner's motive was inexplicable, that he had a history of unstable relationships, or that he required further self-help programming. After the court of appeal and California

4

Supreme Court denied his petition summarily, Petitioner brought a federal habeas petition in this Court.

## LEGAL STANDARD

Because this case involves a federal habeas corpus challenge to a State parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002). Under AEDPA, a district court may not grant habeas relief unless the State court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). A federal court must presume the correctness of the State court's factual findings. 28 U.S.C. § 2254(e)(1).

Respondent concedes that Petitioner has exhausted his State remedies by filing the petition for a writ of habeas corpus in the California Supreme Court. Where, as here, the highest State court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under § 2254(d) is of the last State court opinion to reach the merits. Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last State court opinion to address the merits of Petitioner's claim is the opinion of the Los Angeles County

5

Superior Court.[4]  Ex. E.

DISCUSSION

I. Jurisdiction

Respondent argues that the Court does not have subject matter jurisdiction because State parole matters do not constitute a federal question on the grounds that denial of parole does not affect a constitutionally protected liberty interest.  Although a convicted person has no inherent or constitutional right to early release on parole, a State's statutory parole scheme may create "a presumption that parole release will be granted" if it uses mandatory language.  Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 12 (1979).  This presumption of parole release gives rise to a constitutionally protected liberty interest that cannot be denied without adequate due process protection.  Id. at 11-16; see also Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987).

In Allen, the United States Supreme Court held that Montana's statutory parole scheme, which instructed that the parole board "shall" release a prisoner on parole absent certain conditions, used mandatory language such that it created a constitutionally protected right that parole would be granted if those conditions were not found to exist.  Allen, 482 U.S. at 376-78.  Also, in Greenholtz, the Supreme Court held that Nebraska's parole statute, which instructed that the parole board "shall" release the

---

[4] Because the superior court did not address Petitioner's claim regarding the correctional counselor's risk assessment, the last explained opinion of this claim is the opinion of the Board.

6

prisoner on parole absent certain conditions, created a liberty interest in release on parole if those conditions were found not to exist. Greenholtz, 442 U.S. at 11-12.

California's parole scheme largely parallels the Montana and Nebraska schemes. California Penal Code § 3041 instructs that the Board "shall set a release date" unless it decides this is inadvisable based on the nature of the current offense and of any past offenses and in consideration of public safety:

> [a]  One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall . . . meet with the inmate and shall normally set a parole release date . . . The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the inmate was sentenced and other factors in mitigation or aggravation of the crime . . .
> [b]  The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041(a), (b).

The Ninth Circuit has held that the California parole scheme "gives rise to a cognizable liberty interest in release on parole" under the Allen and Greenholtz standards because it "'creates a presumption that parole release will be granted' unless the statutorily defined determinations [set forth in § 3041(b)] are made." McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) (quoting Greenholtz, 442 U.S. at 12). Thus, under Ninth Circuit

7

authority, the mandatory language of California's parole scheme creates a federally protected liberty interest such that an inmate has a right to a parole date absent the determinations set forth in § 3041(b).

Respondent relies on In re Dannenberg, 34 Cal. 4th 1061 (2005), for the proposition that California prisoners have no liberty interest in parole and thus have no federal due process rights in connection with parole eligibility. The Ninth Circuit has recently rejected this contention. Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006). Therefore, the Court has subject matter jurisdiction under 28 U.S.C. § 2254 to decide whether Petitioner's Fourteenth Amendment right to due process was violated by the Board's determination that he was not suitable for parole.

II. Due Process Claim

Petitioner asserts that his due process rights were violated by the Board's decision because no evidence supports its finding that he is unsuitable for parole. Because California prisoners have a constitutionally protected liberty interest in release on parole, they cannot be denied a parole date without the procedural protections necessary to satisfy due process. McQuillion, 306 F.3d at 902. A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. Superintendent v. Hill, 472 U.S. 445, 455 (1985); McQuillion, 306 F.3d at 904; Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995). The evidence underlying the board's decision must have

8

some indicia of reliability. McQuillion, 306 F.3d at 904; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).

In Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003), the court found that parole denial based solely on the gravity of the commitment offense can initially satisfy due process requirements, and that the "some evidence" standard could be satisfied by the Board's finding that the commitment offense was particularly brutal. Petitioner argues that the Board must articulate a rational nexus between the factors it cites in its decision and its finding that Petitioner's release would cause an unreasonable risk of harm to society. However, no clearly established federal law requires that such a nexus be shown. Biggs did not require that the Board explain how this brutality related to the risk posed by the petitioner if released. Id.

However, the Ninth Circuit Biggs panel said in dicta that courts may also consider the parole board's decision-making process over time: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 916-17.

The California Supreme Court has held that the facts of the crime alone can support a sentence longer than the statutory minimum, even if everything else about the prisoner is laudable, as long as the Board points to factors beyond the minimum elements of the crime for which the inmate was committed. Dannenberg, 34 Cal.

4th at 1071; In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002) (relying on the nature of the offense might violate due process if no circumstances of the offense could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense).

Here, although the Board cited numerous reasons for finding Petitioner unsuitable for parole, all but two of these reasons were rejected by the State habeas court. The remaining two reasons are the correctional counselor's assessment that Petitioner would pose a moderate threat to the community if released and the nature of Petitioner's commitment offense.

Petitioner asserts that the Board's reliance on his correctional counselor's risk assessment was impermissible because the counselor was not a trained psychologist. Petitioner relies on an unpublished State trial court decision, In re Cortez, BH001953 (Los Angeles Superior Court August, 2003), for the proposition that the Board should not rely on the risk assessments of correctional counselors. However, because unpublished opinions have no precedential value and may not be cited or relied upon by parties, see California Court Rule 977(a); Santa Ana Hospital Medical Center v. Belshe, 56 Cal. App. 4th 819, 830-831 (1997), the Court does not consider this case. The State habeas court noted in a footnote that the issue of the Board's reliance on correctional counselors' risk assessments was under review before the court of appeal in In re Aremu, BH002661 (Los Angeles Superior Court August, 2004), and therefore did not rule on it pending guidance from the Aremu court. In May, 2005, the appellate court issued an unpublished decision,

10

In re Aremu, 2005 WL 1227656 (Cal. App.).  The court denied the petition because the petitioner had failed to exhaust administrative remedies, but noted that on August 5, 2004, the California Department of Corrections (CDC) had issued a temporary directive instructing correctional counselors to discontinue providing opinions regarding whether prisoners are a threat to public safety.  Id. at *4.  Because In re Aremu is an unpublished decision, the Court does not consider it either.  Therefore, the correctional counselor's risk assessment constitutes some evidence upon which the Board relied.

The remaining evidence relied upon by the Board in finding Petitioner unsuitable for parole was the nature of his commitment offense.  Petitioner argues that no evidence supports the Board's finding that the gravity of the offense indicated that it was particularly heinous or calculated, as required for a finding of unsuitability under title 15, California Code of Regulations, section 2402(c).[5]  Petitioner further asserts that the offense

---

[5] Under section 2402(c), the listed circumstances tending to show unsuitability for parole include:

> (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>
> > (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> >
> > (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> >
> > (C) The victim was abused, defiled or mutilated during or after the offense.
> >
> > (D) The offense was carried out in a manner

11

could not have been carried out in a particularly brutal manner because the underlying crime never occurred, and that the offense was no more calculated than any conspiracy, which by its nature, must be planned.

However, the variety and number of lethal weapons uncovered by police inside Petitioner's truck, including firearms and ammunition, a large dagger, and an explosive device, indicate that the conspiracy was of a particularly heinous nature. Thus, some evidence supports the Board's conclusion that Petitioner was unsuitable for parole based on his commitment offense.

Petitioner asserts that the Board's reliance on an unchanging factor such as his commitment offense violates due process. Citing Cal. Code Regs, title 15, § 2403,[6] Petitioner points out that the base term for a life prisoner convicted of second-degree murder found suitable for parole is nineteen years.[7] Citing Cal. Code

---

which demonstrates an exceptionally callous disregard for human suffering.

[6] Section 2403(a) provides that a base term shall be set for each life term prisoner who is found suitable for parole. The base term shall be determined solely by the gravity of the base crime. Several matrices of base terms are provided and the Board is generally to impose the middle term of the matrix most closely related to the base crime.

[7] Section 2403(g) provides that in considering life term crimes for which no matrix is given, the panel shall impose a base term applicable to the offense or offenses of similar gravity with respect to the threat to the public. Petitioner states that no matrix exists for conspiracy to commit second degree murder. Therefore, his use of the matrix for second degree murder appears to be correct.

12

Regs, title 15, § 2410,[8] Petitioner points out that this nineteen year term would be reduced by sixty months, assuming four months of credit for each of his fifteen disciplinary-free years in prison and 137 days of pre-sentence credits awarded by the sentencing court. Thus, he calculates that the nineteen year base term would be reduced to a term of thirteen years and seven months which would result in a parole date in December, 2002. He asserts that the fact that he has been incarcerated five years in excess of his fifteen-year minimum term and three and half years longer than the maximum term set forth for second-degree murder in the regulations, allowing for credit reduction, shows that the Board, by relying on reasons that will forever remain unchanged, is converting his sentence of life with the possibility of parole into a sentence of life without the possibility of parole. Petitioner distinguishes his case in which he has been thrice denied parole from Biggs, 334 F.3d at 914, where the petitioner had only been denied parole once, in support of his claim that his denial of parole is of constitutional magnitude.

    Nevertheless, the Board's decision at issue here does not rise to a due process violation. Although the Ninth Circuit has stated that, over time, continuous denial of parole based on the

---

[8]Section 2410 provides that life prisoners may earn post-conviction credit for each year spent in State prison and that, prior to the initial parole consideration hearing, life prisoners shall have a documentation hearing at which the Board documents the prisoner's performance, participation and behavior. However, credit is not granted or denied at the documentation hearing; the documentation is used by the panel which establishes a parole date to determine how much, if any, credit should be granted. The suggested amount of post-conviction credit is zero to four months for each year served.

13

commitment offense could result in denial of due process, see Biggs, 334 F.3d at 916-17, it has not specified the number of denials or the length of time served beyond the minimum sentence that would constitute a due process violation. District courts which have granted habeas petitions challenging the Board's decisions addressed situations involving more denials of parole than in the instant case. See e.g., Irons v. Carey, 358 F. Supp. 2d 936, 947 (E.D. Cal. 2005) (finding due process violation in denial of parole at fifth parole suitability hearing after petitioner had served sixteen years of a seventeen-years-to-life sentence for second degree murder with a two-year enhancement for use of firearm where all factors indicated suitability for parole), rev'd, --- F.3d ----, 2007 WL 656345 (9th Cir. 2007) (given the egregiousness of the commitment offense, due process not violated when Board deemed petitioner unsuitable for parole prior to expiration of his minimum term); Johnson v. Finn, 2006 WL 195159, *12 (E.D. Cal. Jan. 19, 2006) (finding due process violation in denial of parole at twelfth parole suitability hearing after petitioner had served twenty-four years of sentence of life with the possibility of parole for first degree murder where all factors indicated suitability for parole).

Accordingly, the superior court's finding that some evidence supported the Board's finding that Petitioner was unsuitable for parole was not contrary to, nor an unreasonable application of, clearly established federal law. However, if Petitioner continues his exemplary behavior in prison and the Board denies parole based solely upon unchanging facts such as the nature of the crime, the

14

Board's decision may eventually amount to a due process violation. See Biggs, 334 F.3d at 916-17.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 3/21/07



CLAUDIA WILKEN
United States District Judge

15